THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* GREGORY BARDECKE and Eleven Others, Defendants.

Supreme Court, Oneida County, September 3, 1937.

*Carl Peterson, District Attorney,* for the plaintiff.

*Willard R. Pratt,* for the defendants.

CROSS, J. The only issue before this court is whether it is reasonable that the charges against the above-named defendants be presented by indictment. The court is limited to the inquiry as to whether some cause exists which is likely to prejudice the rights of the accused or injuriously affect the impartial administration of justice.

The Court of Appeals of this State, in an opinion written for a unanimous court by LEHMAN, J., in April, 1937, in *People* v. *Robinson* (273 N. Y. 438), reiterated in emphatic terms, in reversing a conviction by a lower court, the right of a defendant to a fair trial. The court said:

"An accused is entitled to a fair trial. Our rules of law are intended to guarantee to him that right and to afford him protection against its invasion. * * *

" Judges trained by years of experience to base decision solely upon competent evidence contained in the record are not always completely confident of their ability to disregard and remain uninfluenced by information, or even impressions, conveyed to them dehors the record. * * *

" ' We must give to any defendant the right to be tried for the crime with which he is charged, and upon evidence proving or tending to prove that crime, uninfluenced by irrelevant facts and circumstances which tend to prejudice or mislead the jury. Issues must be left clear, not smothered or in a haze.' (*People* v. *Posner*, 273 N. Y. 184, 190, opinion by CRANE, Ch. J.)."

In the cited case a conviction of the defendant was reversed because of an impuls ve or perverse statement of a witness who made prejudicial reference to matters which were extraneous to the charge and which could not become the subject of proper inquiry at the trial. The trial court directed the jury to disregard the expression of opinion by this witness, on the ground that it was not evidence, but the Court of Appeals held that such conduct might well have improperly influenced the jury.

Having in mind the salutary rule giving to every defendant the right to a fair trial, let us examine the record before this court on the instant application.

It appears that on or about August 13, 1937, a strike was called by employees of the Derby Sportswear plant in the village of Herkimer over the question of hours, wages and working conditions championed by representatives of the International Ladies Garment Workers Union. The strike still continues. About fifty arrests of strikers and non-strikers have been made arising out of alleged sporadic emotional episodes such as " slapping," " fisticuffs " and " stone and egg-throwing." These charges are technically known as disorderly conduct, in violation of section 722 of the Penal Law, and third degree assault. The acts resulting in these arrests proceed from a " labor dispute " which had been germinated from a conflicting background of social and economic fact, argument and opinion. The record here does not disclose that any of the alleged violators of the law awaiting trial are con-

firmed enemies of society or associates of thieves and criminals. They are common people engaged in the age-old struggle for self-preservation and advancement to a higher level in a system of society that seems to them a whirlpool of strange forces presenting a challenge to their enterprise, their energy and their emotion as well as their intellect.

All these defendants are charged with crimes that are so closely related in cause and effect as to be inextricably intermingled.

All the defendants have been arraigned before a magistrate whose approach to the discharge of his judicial function, as claimed by t⸍e defendants, is delineated in an affidavit as follows: " John J. Walsh, being duly sworn, deposes and says that he is an attorney-in-law, having an office for the practice of law at 1116 First National Bank Building, Utica, N. Y.; that deponent appeared for the above named defendant before Hon. Alfred Winston; that at about 6:20 P. M., of August 18th, 1937, deponent was before said Alfred Winston, Police Justice, to appear for a number of defendants, on charges arising out of the strike at the Derby Sportswear, Inc., when the said Police Justice stated to your deponent ' The public won't stand for it. I'm telling you right now I'm going to give the first one that's convicted the limit. You can get away with it in a big city, but not here because I know public sentiment. I'm going to make an example.' "

The magistrate makes an affidavit that he did not make the quoted statement either in words or substance. Which sworn statement is true and which is false? The court cannot determine that issue on affidavits. That issue can be determined by a grand jury and trial by due process of law. The magistrate admits in the affidavit made by him that he did say, at about the time stated in the Walsh affidavit and at a time when a number of arrests had been made of persons supposed to be strikers and persons supposed to be factory workers not on strike, that " rock throwing and violence of any kind must stop, and that the first one convicted would receive a *severe sentence* which would be an example. I said that such things might be tolerated in cities but would not be here. I did not say that I would give anyone the limit." This statement the magistrate avers was in substance an edict issued by him in general terms and not directed to any particular person. It must be borne in mind that the magistrate is, under our form of government, a " judicial officer " and not the prosecuting attorney. This magistrate is clothed by law with authority to exercise wide discretion upon conviction as to the extent of punishment, including the right to suspend sentence. The law contemplates that this

discretion be exercised wisely and judicially and not arbitrarily or capriciously. The magistrate cannot determine, in advance of the trial, what, if any, extenuating circumstances may exist, even in the event of a proper conviction. A just sentence based upon proper considerations is an important element of a fair trial. The fact that some of the defendants assisting in the cause of the strikers were from the city made the magistrate's reference to toleration of crime in cities by way of comparison with his own attitude wholly unnecessary. Its natural effect was to inspire fear in the minds of the defendants awaiting trials, wherein the evidence had not yet been heard, that upon conviction sentence would be imposed on the basis of a preconceived bias of the magistrate rather than upon due consideration of all proper factors in their true relation to the offense as disclosed by the evidence. This unhappy comment, although, no doubt, not so intended, fell little short of what is known in the law as intimidation.

It is of prime importance to the continuance of organized government that those convicted of crime shall have no just cause to complain of the impartiality of the process and of the tribunal by which the conviction is accomplished. No person devoted to the principles of Anglo-Saxon justice would seriously argue that a magistrate resting under the implication of bias and prejudice presented by the affidavit of Walsh should preside at these trials.

Again illustrating the difficulty of avoiding the effect of concealed opinion based on information dehors the record, the following affidavit of a citizen of Herkimer is explanatory:

" Felix Piseck, being duly sworn, deposes and says that he resides at 137 Smith St., Herkimer, N. Y.; that deponent was at a place known as ' Pete's Grill,' on Stimson St., in the Village of Herkimer, N. Y. on Saturday, August 21st, 1937, after the trial of Theresa Manino had been stopped by Court Order. Deponent was playing a game of pitch with Officer Drabent, complainant in that case and some other gentlemen.

" When the game broke up, one Webster Chase, who was tentatively accepted as a juror in the Manino case, sat down at the table and entered into a discussion of the strike and of the case, with deponent. Deponent asked said Chase how he would be able to determine who threw a stone if a crowd of some 15 girls were together, unless some eye witness saw a particular girl throw the stone. Chase replied that he did not care about that, but the strikers ' are nothing but trouble makers and I will give them the works.' Deponent asked Chase what kind of a citizen he thought he was to take that attitude and left him."

The jury list has been exhausted and a trial of these actions will take the time of local jurors for the next two months. These jurors serve without pay. If a jury trial is had in each action, it will require upwards of eight hundred jurors to be summoned. The effect of deferring the trials until the grand jury meets in November is inconsequential in comparison with the vastness of the issue of the impartial administration of justice.

These defendants may under section 57 of the Code of Criminal Procedure go before the grand jury and tell their story. Concededly this may result in explanations that will avoid the necessity for a multiplicity of indictments and trials. The grand jury may investigate and make a presentment if it appears that perjury has been committed by any person at any stage of these proceedings. The grand jury will be made up of a cross-section of the citizens of Herkimer county, removed from the tension of the strike sector. After all, true justice is not a mechanized product.

The granting of this application must not be construed by any person as an express or implied approval of acts of violence, coercion or intimidation. Violence, coercion and intimidation, whether by the worker, or by the employer or by the employer's agents, are equally subversive of the cause of law and order. Coercion or intimidation by a magistrate should be scrupulously avoided.

No one can justly say that a grand and trial jury of Herkimer county will fail in its duty and permit the guilty to go unwhipped of justice. The forces of law and order in the town and village of Herkimer will comprehend the reasonableness of removing the trial of these actions from the atmosphere of suspicion and actual charges of bias and prejudice in which the magistrate's court is involved. True or false, these charges, in the event of a conviction, would inevitably lead the shadow of distrust and resentment to hover over the whole proceeding. It is reasonable to attempt to avoid such a result. Speedy trials are not so important as fair and impartial trials.

Courts do not and should not take sides in the ceaseless struggle between capital and labor nor between those who wish to strike and those who do not wish to do so.

If these charges are presented by indictment, the parties directly affected, as well as the public interest, will have the assurance of a trial before an impartial judge, and will not lose the advantage of the development of the facts by a diligent and capable district attorney. All sides of the controversy will have the benefit of the restraining influence of an impartial tribunal in order that the ends of justice may be achieved according to the forms and spirit of the law. Without such assurance, the true meaning of the word

" justice " would indeed be perverted into a mockery, a delusion and a snare.

Upon all the facts and circumstances in the record before me, including the specific aspects of the subject to which I have referred in this memorandum, I conceive it to be my duty, under the law, to issue the certificate provided by section 57 of the Code of Criminal Procedure.

Accordingly, I hereby certify that it is reasonable that the charges against the above-named defendants be prosecuted by indictment instead of before the police justice. Bail will be fixed on notice to the district attorney.